to provide a suitable and safe machine. But the evidence as to the defective material was admitted without objection, and the motion to strike out was not timely, so that the question of negligence is to be considered on the entire record. It does not appear, however, that any of the ragged shells caused or contributed to the injury. Only a small quantity of the shells handled were defective, and the plaintiff admitted that he did not examine each one as he placed it in the lathe, but that he adopted the new method for all so as not to take any chances.

Again, it is quite evident that the plaintiff assumed any risk that attended the changed manner of placing the shells. The record will not support the contention that the plaintiff was ordered to adopt the new method. It was voluntary on his part. There was no defect in the machine. The plaintiff was skilled in its operation, and fully acquainted with its behavior. Any risk that he took in placing the shells was an obvious one. The danger to be avoided was one arising from the manner of using the material and his hands. This branch of the case seems to fall strictly within that class of cases of which Spencer v. Worthington, 44 App. Div. 496, 60 N. Y. Supp. 873, and Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56, are especially applicable.

On the other branch of the case, it is quite clear that the plaintiff was not free from contributory negligence. The power that brought up the second head against the shell was absolutely in the control of the plaintiff. When his foot was off the treadle, the head was stationary and could not move. He testified several times, and unequivocally, that the heads were brought together by the power applied to the treadle. "Q. And if you had not put your foot on the lever, these clutches (heads) would not have come together, of course? A. Certainly not." A patent expert called by the defendant also testified that it was "utterly impossible" to bring the heads or clutches together unless the operator placed his foot on the treadle. It is therefore apparent that with no defect in the machine, with its mechanism and operation entirely familiar to the plaintiff over a long course of years, and the power absolutely in his own control, the injury was occasioned by his own act, and is not to be charged to the defendant. The judgment must be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

---

### DORRY v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, First Department. May 5, 1905.)

1. STREET RAILWAYS—NEGLIGENCE—INJURIES TO DRIVERS OF VEHICLES—EVIDENCE—DECLARATIONS.

In an action against a street railway for personal injuries by a collision between the truck plaintiff was driving and one of defendant's cars, declarations of the motorman of the car as to his position at the time of the accident, and as to how far away the truck was when he first saw it,

made a long time thereafter to plaintiff's attorney, were not competent evidence against defendant.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 365, 912, 932.]

2. SAME—CROSS-EXAMINATION—CONTRADICTING ONE'S OWN WITNESS.

When plaintiff's attorney on cross-examination questioned the motorman as to such declarations, he made the witness his own, and could not contradict the latter's denial that he made the declarations by proving what the witness did say at the interview in which the declarations were claimed to have been made.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1270, 1275.]

3. SAME.

When called by defendant in direct examination, the witness merely testified that he was the motorman of the car at the time of the accident, that he went to plaintiff's attorney's office prior to the trial of another action against defendant by another man on the truck at the time of the collision, and that witness was not working for defendant. He was not asked anything about the accident or as to his position on the car at the time. *Held,* that the declarations were not admissible to contradict any testimony witness had given for defendant.

4. SAME—REVERSIBLE ERROR.

In rebuttal of the motorman's denial that he made the declarations, a witness for plaintiff testified, over defendant's objection, that the motorman stated in an interview with plaintiff's attorney that at the time of the accident the car was going as fast as it could, that the truck was not more than eight yards from him when he first saw it, and that he was then standing in the doorway of the car, with his left side or back towards the front of the car. *Held,* that as the evidence was incompetent, and would, if true, justify a finding of negligence, its admission was reversible error.

Appeal from Trial Term, New York County.

Action by Francis Dorry against the Union Railway Company of New York City. From a judgment for plaintiff, and from an order denying its motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Bayard H. Ames, for appellant.
Jacob Steinhardt, for respondent.

INGRAHAM, J. The plaintiff was the driver of a truck which was run into by one of the defendant's cars, and this action is brought to recover the damages sustained by him in consequence of the collision. Upon the trial the defendant called the motorman, who testified that he was the motorman of the car, that he went to the plaintiff's attorney's office prior to the trial of another action brought against the same defendant by another man upon the truck at the time of the collision, and that he was not working for the defendant. This was the only testimony that he gave for the defendant. Upon cross-examination, plaintiff's counsel asked him about statements that he had made to the plaintiff's attorney subsequent to the accident; the witness denying that he made certain statements about which he was interrogated. He was

then asked about his testimony upon the trial of the other action against the defendant, and testified as to his evidence upon the other trial. Upon rebuttal an attorney in the office of the plaintiff's attorney was called, and testified that he was present at an interview between this motorman and one of the plaintiff's attorneys, and was asked as to admissions made by the motorman to the plaintiff's attorney as to the accident. This was objected to by the defendant, the objection overruled, and the defendant excepted. The witness then testified: That the motorman stated to one of the plaintiff's attorneys that at the time of the accident the car was going between 20 and 25 miles an hour; was going as fast as it could go, with both motors on. That one of the plaintiff's attorneys asked him: "Were you standing when you first saw the truck?" To which the motorman replied: "I was standing in the doorway, about four feet six inches away from the controller, with my right side towards the door, and my left side towards the front of the car. I had just been talking to the conductor." That the attorney then asked him: "Why were you inside of the car? Were you cold?" To which the motorman said: "No; there were other reasons." And when asked what the other reasons were, he said: "Well, my hours were too long. I had been working since five o'clock the evening before, and this was more than twelve hours already. I was tired." That he further said that when he first saw the truck it was not more than eight yards from him; that he heard a shout, and turned around and reversed his power at five points, and put on the brake, but that he was too late. That the motorman further said that he was standing on the front platform of the car, with his left hand on the left side of the doorway, with his back towards the front of the car. That at a subsequent interview the motorman told one of the plaintiff's attorneys that an investigator from the railroad company had called on him the night before, and had offered him $10 a day to testify for the company; that, when he refused to make any statement to the inspector, the inspector then offered to pay him any sum he wanted to testify for the company. This was all taken under the objection and exception of the defendant. I think this was error that requires a reversal of the judgment. The motorman was called as a witness by the defendant, and was asked as to whether he was the motorman, and whether he was then in the employ of the company. Upon cross-examination by the plaintiff's attorney, he was asked as to whether or not he made these statements to one of the plaintiff's attorneys, which he denied having done. The declaration of the motorman, made long after the accident, was not competent evidence against the defendant; and when the plaintiff's attorney asked him about this interview, long after the accident, he made the witness his own, and, as these conversations were collateral, he could not contradict them by proving what the motorman did say. The cross-examination had no relation to anything that the witness had testified to upon his direct examination. He was not asked by the defendant anything about the accident, or his position in the car at the time of the collision, and the question as

to what statements the witness made to one of the plaintiff's attorneys had nothing to do with the testimony that the witness had given on his direct examination. Plaintiff was not, therefore, entitled to introduce these declarations of the motorman to contradict any testimony that the witness had given for the defendant. This question of the position of the motorman at the time of the injury was most material, and, if true, fully justified a finding of negligence. As it was clearly incompetent, we are required to reverse the judgment.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.